# Jacob Snyder and wife *against* Samuel Castor, adm'r of George Castor, deceased.

On a motion for a rule to shew cause, depositions on the adverse side will not be received.

Part of a tract of land could not be levied on by a sheriff legally since the act of 1705, nor since the act of March 21, 1806. Nor could an administrator agree to such a levy.

MOTION for a rule to shew cause, why the levy and inquisition held under the execution should not be set aside. The *fieri facias* was returnable to July term 1807, and was levied on 30 acres, more or less, of land, situate near the Oxford road, eight miles from Philadelphia.

The lands were condemned by an inquisition, taken in the city on Saturday the 25th July; but when the same was returned into the prothonotary's office did not appear. A bond had been given by the administrator to the sheriff, for the amount of the damages and costs, dated 30th September 1807, payable on the 14th November following, one month before the

[Snyde₁ and Wife *v.* Castor's Adm'rs.]

sitting of the court in Bank. The motion was grounded on the affidavit of the administrator, that the 30 acres levied on, were part of a larger tract of 200 acres, which had been many years in the family of the deceased.

The deposition of George Facundus, the sub-sheriff, was offered to the court on the part of the plaintiff, tending to shew an acquiescence in the levy by the defendant; but the court refused the same in the present stage of the proceedings. When the *rule applied for is granted upon proper grounds shewn, the adverse party, with his depositions, will be fully [*444 heard.

Rule to shew cause.

On the hearing upon this rule, it appeared that when Facundus served the execution, it was made known to the defendant, and that he had given him several notices of holding an inquisition upon the land. That he never complained of want of notice; and that the usual mode of notifying the taking of such inquisitions, is by putting up notices in the offices of the prothonotary and sheriff.

Mr. Ingersoll for the defendant urged, that the present levy was in direct opposition to the act of 21st March 1806, 7 St. Laws 566, the 11th section whereof directs, that not less than one whole tract or lot of land, with the appurtenances, shall be levied on, in defect of personal estate; and that notice shall be given of the time of holding the inquisition.

Messrs. Hopkinson and S. Levy for the plaintiff contended, that the present application was merely to effect delay and produce expence. A *venditioni exponas* has issued, returnable to this term; and the sheriff, without proceeding to a sale, has raised the damages, interest and costs upon the defendant's bond. voluntarily given. The defendant comes too late; he might have applied at the last July term, erected under the late act of 10th April 1807. 8 St. Laws 249, § 8. Though the judge who then attended, might not be able to decide finally on the supposed error, yet he might grant rules, and make all necessary orders preparatory to the hearing. This is analogous to the case of an executor sued, not pleading judgments against him; when missing the opportunity, he loses it forever. 1 Ld. Raym. 594. A strong case is there put of Gilburn *v.* Rack, 2 Sid. 12, where a judgment of debt was given against tenant in tail, who died, and the lands intailed descended to the issue; a *scire facias* was brought against the heir and terre-tenant, and the heir warned; a judgment had against him by default, estops him from saying that he was a tenant in tail. The same case is cited in 2 Ld Raym. 1051. 2 Stra. 732. Where there is error, the party must point it out, and take advantage of it in due time. 2 Ld. Raym. 885. A motion to quash a foreign attachment, must be made at the term to which it is returnable. 2 Dall. 79.

4 YEATES—27

But at most, the levy by the sheriff's officer was only a voidable act. The defendant has acquiesced therein, and by giving his bond, has made the debt his own. A voidable act may be made good by the subsequent conduct of the party. Co. Lit. 215, a. *Plowd. 136. An infant seals a lease, but being *445] of full age before the rent day became, and not waiving the land, he was liable for the rent. Cro. Jac. 320, Bull. 177.

The inquisition is directed to be held on the premises in execution by the late act, "if required by the defendant or his "agent." He is therefore to do the first act, "of which notice "shall be given;" the clause directs the proceeding to be according to the existing laws, referring to the act of 1705, and the notices in the public offices are conformable to the usual practice in such cases.

Mr. Ingersoll in reply. The present application is not too late. The inquisition was taken on Saturday evening, and the court sat upon the Monday following. Before any default can be ascribed to the defendant, it should have been shewn, that the *fi. fa.* and inquisition were returned at the last July term. It is incumbent on the plaintiff to prove the affirmative hereof; and it does not lie on the defendant to shew it negatively.

But if we had then applied, what redress could have been given? It is admitted, that the judge who sat, could not have decided on the application, but merely make preparatory rules; so that in such case, we should have been precisely in the same state in which we now are. If there had ever been a sale, we might now well move against it, the law being imperative. There is no ground from whence acquiescence can be inferred. The defendant early objected to the improper levy; and though an individual owning the premises levied upon, might have agreed thereto, yet it was not competent to an administrator acting for other persons, to conclude them by such an agreement. The bond was given to prevent all embarrassments on the part of the sheriff, and was recommended by counsel.

Antecedent to the late act, the court would have interposed on such a levy of 30 acres, part of a tract of 200 acres. The sale would have essentially injured the residue of the tract. But the legislature have provided for the very case, and no difficulties can now exist on the subject. Notice is also to be given of holding the inquisition. It must be held on the premises, if required by the defendant or his agent. But there may be a long interval between the time of levy and taking the inquisition. And how is the defendant to be apprised of the latter time? To effectuate the intentions of the legislature, notice must be given to the defendant, when the inquisition is not held upon the land.

By THE COURT. The objection urged against the present application is that it comes too late, and that there has been an acquiescence in the acts of the sheriff, so as to take the case out

[Turnbull et al. *v.* O'Hara.]

*of the late law. But we are far from being satisfied, that the *fieri facias* was returned in July term last ; and unless this was the case, there is no ground for the objection. At all events, the sitting judge could not have set aside the levy. It is true, he might have stayed the proceedings, and granted rules preparatory to the final hearing. This however would not expedite the business, but would leave the parties as we now find them.

Giving the bond could be considered in no other light than as a prudential step under existing circumstances. The administrator could not without a breach of his duty, have assented to an illegal act tending to prejudice those for whom he was intrusted. But we have no evidence of any such agreement.

Under the old act of 1705, this court would not have suffered the levy of a parcel of a distinct tract of land, by the sheriff ; because it would tend do defeat the provisions of that law, and would be injurious as well to other creditors as the debtor. The present case is clearly within the words and spirit of the law of 21st March 1806 ; and consequently the levy, inquisition and *venditioni exponas* must be set aside and quashed.

Cited in 2 Binn. 7.